1   FOLGER LEVIN & KAHN LLP
    Michael F. Kelleher (CSB No. 165493, mkelleher@flk.com)
2   Kevin P. O'Brien (CSB No. 215148, kobien@flk.com)
    Embarcadero Center West
3   275 Battery Street, 23rd Floor
    San Francisco, CA  94111
4   Telephone: (415) 986-2800
    Facsimile: (415) 986-2827
5
    BREALL & BREALL
6   Joseph M. Breall (CSB No. 124329, jmbreall@breallaw.com)
    1255 Post Street, Suite 800
7   San Francisco, CA 94109
    Telephone:  (415) 345-0545
8
9   Attorneys for Plaintiffs and Counter Defendants.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS ROVENS, ADRIENNE ROVENS, and RAYMOND BREGANTE and JEFFREY M. WHITE as Trustees of the Michael W. Rovens and Elise D. Shanfeld Irrevocable Trust,<br><br>Plaintiffs,<br><br>v.<br><br>THEODORE BROWN & PARTNERS, INC.<br><br>Defendant.<br><br>——————————————————<br><br>AND RELATED COUNTER CLAIMS | Case No. C 07-05473 CRB<br><br>**DECLARATION OF KEVIN P. O'BRIEN IN SUPPORT OF PLAINTIFFS AND COUNTERDEFENDANTS' MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**<br><br>**Judge:** Hon. Charles R. Breyer<br>**Date:** June 27, 2008<br>**Time:** 10:00 a.m.<br>**Courtroom:** 8, 19th Floor |

I, Kevin P. O'Brien, hereby declare and state as follows:

1.      I am an associate in the law firm of Folger Levin & Kahn LLP, a member in good standing of the State Bar of California and counsel for Plaintiffs and Counter Defendants Louis Rovens and Adrienne Rovens and Raymond Bregante and Jeffrey M. White as Trustees of the

1    Michael W. Rovens and Elise D. Shanfeld Irrevocable Trust (collectively "Rovens Parties") in the

2    above-captioned case.

3           2.       I make this declaration of my own personal knowledge and, if called and sworn as

4    a witness, I could and would testify competently to the matters set forth herein.

5           3.       On May 20, 2008, during a meet and confer conference, Michael F. Kelleher,

6    attorney for the Rovens Parties, asked Paul Gaspari, attorney for Theodore Brown & Partners,

7    Inc. ("TBP"), if TBP would stipulate to allow the Rovens Parties to file a third-party complaint

8    against Salazar Designs, LLC. Mr. Gaspari asked to see a draft of the proposed third-party

9    complaint. On May 21, 2008, I sent to Mr. Gaspari a draft of the Rovens Parties' proposed Third-

10   Party Complaint for Implied Contractual Indemnification. On or about May 22, 2008, Mr.

11   Gaspari responded that TBP would not stipulate to allow the Rovens Parties to file a third-party

12   complaint against Salazar Designs, LLC and that the Rovens Parties should file a motion for

13   leave with the Court.

14          4.       Attached hereto as Exhibit A is a true and correct copy of Theodore Brown &

15   Partners, Inc.'s June 5, 2006 Proposal to Mr. Roberto Salazar, previously marked as Exhibit 1 to

16   the deposition of Theodore W. Brown taken on February 28, 2008 in this action. A true and

17   correct copy of the excerpt, p. 89:3-18, from the deposition of Theodore W. Brown authenticating

18   the Exhibit is attached as part of Exhibit B.

19          5.       Attached hereto as Exhibit B is a true and correct copy of excerpts from the

20   deposition of Theodore W. Brown taken on February 28, 2008 in this action.

21       I declare under penalty of perjury under the laws of the United States of America and the

22   State of California that the foregoing is true and correct. Executed this 6th day of June, 2008, at

23   San Francisco, California.

24

25                               /s/
                                 Kevin P. O'Brien

26   81052\2001\604496.1

27

28

**EXHIBIT A**

*Theodore Brown & Partners, Inc.*

June 5, 2006

PROPOSAL TO:     Mr. Roberto Salazar
Salazar Designs, Inc.
550 15th Street #M17
San Francisco, CA 94103

I.   PROJECT

Architectural interior renovation of the existing residential unit #32A in the Four Seasons
Hotel located at 745 Market Street in San Francisco, California.

II.  DESIGN OBJECTIVE

The objective of our work on this project is to prepare architectural construction drawings for
the above mentioned residential unit.  Subsequent to client approval, the prepared drawings
will be submitted to general contractors for price quotes.

III. SCOPE OF SERVICES

A. Site Verification and Existing Condition Drawings
1.  Verify existing conditions.
2.  Prepare drawings of existing conditions for proposed demolition plan.

B. Design Development
1.  Develop floor plans for client review and approval.
2.  Prepare interior elevations for the approved plan layouts.

C. Construction Drawings and Bid Processing
1.  Preparation of final construction drawings.
a)  Detailed floor plans and elevations.
b)  Detailed reflected ceiling plans.
c)  General details and detailed sections, as required for construction.
2.  Distribution of drawings as required for project completion.
3.  Coordination with chosen contractor, as required.

EXHIBIT  L
WIT: Brown
DATE: 2-28-08
CAROL NYGARD DROBNY

TBP000248

Mr. Roberto Salazar
June 5, 2006
Page 2

## IV. FEES

Theodore Brown & Partners, Inc. proposes to perform the services outlined in Scope of Services above on an hourly basis, excluding consultant fees, plus reimbursable expenses. Hours recorded on this project by our staff will be charged at our standard hourly rates as follows:

| | |
|---|---|
| Principals | $160.00 |
| Project Director/Associate | $105.00 - $125.00 |
| Project Designer/Manager | $70.00 - $125.00 |
| Project Programmer/Draftsperson | $65.00 - $95.00 |

These rates cover all administration overhead as well as the cost of conventional drafting materials and supplies.

In the event that your firm authorizes Theodore Brown & Partners, Inc. to work overtime to expedite the completion of the project or any sub-phase thereof, hourly fees will be invoiced at one and one-half (1.5) times the regular rate for hours recorded outside normal business hours. In addition, if Architect is required to serve as witness in any arbitration or legal proceeding regarding the Project, hourly fees will be invoiced at one and one-half (1.5) times the regular rate for all hours.

Should it become necessary to refer the interpretation of this agreement for the collection of our fees hereunder to legal counsel, the non-prevailing party shall pay the prevailing party's legal costs and reasonable attorney fees.

## V. ASSUMPTIONS/CONDITIONS

### A. Fee Exclusions

These fees do not include the analysis of engineering required for structural, mechanical, electrical, seismic, acoustical design, hazardous materials removal, waterproofing and all other consultants and/or agency expediter's work not specified in this proposal. Such specialized services shall be performed by qualified consultants retained by your firm and whose work shall be coordinated to our drawings. Invoices for such consultants will be reviewed by our firm and forwarded to your office for direct payment to the consultant.

### B. Additional Services

Additional services beyond the scope of our basic services listed above (if required or requested) may include, but is not limited to, the following items. Such work will also be performed on an hourly basis at our standard rates and billed under another job number as "extras."

TBP000249

Mr. Roberto Salazar
June 5, 2006
Page 3

1. Submission of permit drawing set to the City (if preparation of permit set is included in Scope of Services above).

2. Revisions required as a result of changes in the established basic design or in previously approved documents.

3. Revisions required by contractor substitutions, value engineering, or other changes beyond the control of Theodore Brown & Partners, Inc. (after initial design is accepted).

4. Revisions resulting from changes in governing codes or regulations after initial design is completed, but before final sign-off for permit application.

5. Preparation of statements of probable construction costs and/or detailed cost estimate take-offs.

6. Changes resulting from discovery of concealed conditions during construction.

7. Meetings (other than basic design conferences and site visits covered above) with regulatory agencies, commissions, neighbors, etc.

8. Design or documentation of seismic requirements or anchorage and bracing details to structure (to be provided by a licensed structural engineer if required).

9. Preparation of as-built or record drawings/specifications after (and/or before) design and construction completion.

10. Additional work not included in the Scope of Services listed above.

C. **Reimbursable Expenses**

Authorized expenditures and out-of-pocket expenses made by Theodore Brown & Partners, Inc., for the direct benefit of your project, will be invoiced for reimbursement at actual cost plus ten percent (10%) surcharge to cover administrative handling. Such project expenses may include, but are not limited to:

1. Print charges for reproduction of drawings

2. In-house printing, photocopying and facsimile transmissions

3. Postage and delivery charges

4. Telephone calls made to locations outside the 415 area code

5. Film and film processing

6. Special material costs incurred for the construction scale models and presentation renderings

7. Travel expenses for transportation to locations outside of San Francisco

8. Special consultant fees, if required and authorized

9. Building authority fees and permits

10. Any other special project related items.

TBP000250

Mr. Roberto Salazar
June 5, 2006
Page 4

### D. Invoice Terms

Invoices will be submitted monthly for the hourly fees and expenses charged to your project. Payment is due thirty (30) days from the date of invoice and the unpaid balance will bear a service charge of one and one-half percent (1.5%) per month after thirty (30) days.

### E. Termination

This agreement may be terminated by the Client with or without cause upon seven (7) days written notice to the Architect. Theodore Brown & Partners, Inc. has the right to terminate this agreement for Client's nonpayment of fees or costs due under this agreement, providing that we shall first give you seven (7) days' written notice of our intent to so terminate. In the event of termination, the Architect shall be compensated for all basic and extra services performed to termination date, together with reimbursable expenses then due.

### F. Conditions

The program outlined and proposed fees for this project are based on our present understanding of the amount of area to be analyzed, the general objectives of your program and the scope of our responsibility. You agree to cooperate in scheduling meetings and making decisions on our submissions without undue delay in order to permit completion of the project within scheduled time.

Should the scope of the program be modified or completion of this project be extended three (3) months past the date of signature, we reserve the right to negotiate and appropriate an adjustment to our proposed maximum fees and our scheduled commitments.

Inasmuch as the analysis of the remodeling and/or rehabilitation of an existing building requires that certain assumptions be made regarding existing conditions, and because some of these assumptions cannot be verified without expending great sums of additional money, or destroying otherwise adequate or serviceable portions of the building, the Client agrees that, except for negligence on the part of the design professional, the Client will hold harmless and indemnify the design professional for and against any and all claims, damages, awards and costs of defenses arising out of the professional services provided under this agreement.

### G. Limitation of Liability

Client agrees to limit Theodore Brown & Partners' liability to the Client and to all construction contractors and subcontractors on the project due to the Architect's

TBP000251

Mr. Roberto Salazar
June 5, 2006
Page 5

professional negligent act, error, or omissions, such that the total aggregate liability of
the Architect to all those named shall not exceed 50% of his fee.

### H. Terms of Agreement

All terms, conditions and fees set forth in this proposal shall remain in effect for six (6)
months following the date of this contract, provided that Theodore Brown & Partners,
Inc. receives from your firm a fully executed copy of this agreement no later than one (1)
month following the date of this contract.

## ACCEPTANCE

This proposal is hereby accepted as set forth and the fees and conditions are agreed to as stated.

_____       6-12-06
Theodore Brown                          Date
President and Architect, License No. C7798
Theodore Brown & Partners, Inc.

_____       6-7-06
Roberto Salazar                         Date
Salazar Designs, Inc.

TBP000252

/08/2006 14:35 FAX 2123552066          100 U.N. PLAZA CONDOMINI          Ø001/001

*FAX.(45) 780-0712*

Mr. Roberto Salazar
June 5, 2006
Page 5

professional negligent act, error, or omissions, such that the total aggregate liability of the Architect to all those named shall not exceed 50% of his fee.

**H. Terms of Agreement**

All terms, conditions and fees set forth in this proposal shall remain in effect for six (6) months following the date of this contract, provided that Theodore Brown & Partners, Inc. receives from your firm a fully executed copy of this agreement no later than one (1) month following the date of this contract.

**ACCEPTANCE**

This proposal is hereby accepted as set forth and the fees and conditions are agreed to as stated.

_____          _____
Theodore Brown                            Date
President and Architect, License No. C7798
Theodore Brown & Partners, Inc.

_____          _____
Roberto Salazar                           Date
Salazar Designs, Inc.                     *10-7-06*

TBP000253

**EXHIBIT B**

1         UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3         SAN FRANCISCO DIVISION

4         --oOo--

5  LOUIS ROVENS, ADRIENNE ROVENS,
   and RAYMOND BREGANTE and

6  JEFFREY M. WHITE as Trustees of the
   Michael W. Rovens and Elise D.

7  Shanfeld Irrevocable Trust,

8      Plaintiffs,
     vs.        Case No. 07-05473-CRB

9  THEODORE BROWN & PARTNERS,
   INC.,

10

     Defendant.

11  _____/
   THEODORE BROWN & PARTNERS,

12  INC.,

13      Counter Claimant,
     vs.

14  LOUIS ROVENS, ADRIENNE ROVENS,
   and RAYMOND BREGANTE and

15  JEFFREY M. WHITE as Trustees of the
   Michael W. Rovens and Elise D.

16  Shanfeld Irrevocable Trust,
   ORLANDO DIAZ-ASCUY DESIGNS, INC.,

17  WILLIAM G. WALTERS, dba WALTERS
   ARCHITECTS, and WHITEHOUSE

18  BUILDERS,

19      Counter Defendants.
   _____/

20

       --oOo--

21     THURSDAY, FEBRUARY 28, 2008
       --oOo--

22

    DEPOSITION OF THEODORE W. BROWN

23

       --oOo--

24  Ref.  No. 4755
   Reported By:  CAROL NYGARD DROBNY, CSR No. 4018

25     Registered Merit Reporter

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3               SAN FRANCISCO DIVISION

4                    --oOo--

5    LOUIS ROVENS, ADRIENNE ROVENS,
     and RAYMOND BREGANTE and

6    JEFFREY M. WHITE as Trustees of the
     Michael W. Rovens and Elise D.

7    Shanfeld Irrevocable Trust,

8          Plaintiffs,

            vs.        Case No. 07-05473-CRB

9    THEODORE BROWN & PARTNERS,
     INC.,

10

           Defendant.

11    _____/

     THEODORE BROWN & PARTNERS,

12   INC.,

13         Counter Claimant,

            vs.

14   LOUIS ROVENS, ADRIENNE ROVENS,
     and RAYMOND BREGANTE and

15   JEFFREY M. WHITE as Trustees of the
     Michael W. Rovens and Elise D.

16   Shanfeld Irrevocable Trust,
     ORLANDO DIAZ-ASCUY DESIGNS, INC.,

17   WILLIAM G. WALTERS, dba WALTERS
     ARCHITECTS, and WHITEHOUSE

18   BUILDERS,

19         Counter Defendants.

      _____/

20

21                  --oOo--

22         BE IT REMEMBERED, that on Thursday,

23   February 28, 2008, commencing at the hour of 9:30 a.m.

24   thereof, at the offices of Folger Levin & Kahn, LLP,

25   Embarcadero Center West, 275 Battery Street, 23rd Floor,

1    San Francisco, California, before me, Carol Nygard

2    Drobny, a Certified Shorthand Reporter of the State of

3    California, there personally appeared

4              THEODORE W. BROWN,

5    called as a witness by the Plaintiffs and Counter

6    Defendants, who, being by me first duly sworn, was

7    thereupon examined and interrogated as hereinafter set

8    forth.

9              EXAMINATION

10   BY MR. O'BRIEN:

11     Q.   Good morning, Mr. Brown.

12          My name is Kevin O'Brien, and I represent the

13   Plaintiffs and Counter Defendants in this action, and

14   the Plaintiffs and Counter Defendants are Lou and

15   Adrienne Rovens, Jeffery White and Raymond Bregante as

16   Trustees of the Michael W. Rovens and Elise D. Shanfeld

17   Irrevocable Trust, and then the Counter Defendants are

18   Orlando Diaz-Ascuy Designs, Inc., Whitehouse Builders

19   and William G. Walters.

20          I'm going to be taking your deposition today

21   regarding a lawsuit in Federal Court between Plaintiffs

22   and Counter Defendants and Theodore Brown Partners, Inc.

23          Please state your full name for the record and

24   spell your last name.

25     A.   Theodore Wayne Brown.  Last name is Brown,

1        I would say anywhere from two to four months.

2     Q.    Now, let's assume for a moment that the plans

3   were -- that you did that extra -- that the

4   subcontractors were coordinated, you did the extra two

5   to four months.

6        How much time do you think your firm would

7   have billed in two to four months?

8        MR. GASPARI:  Asked and answered.  Calls for

9   speculation.

10        THE WITNESS:  Yeah.  I don't know.

11   BY MR. O'BRIEN:

12     Q.    Do you know what the -- you know, what your --

13   if your staff is working full time on a project, how

14   much time do they bill per month?

15     A.    Gee, I don't know.

16     Q.    So did -- assume for a moment that the -- the

17   plans -- that you got the coordination you needed, you

18   had the extra two to four months in the -- the

19   construction drawings were ready to bid -- go out to

20   bid, and you had been paid on -- for your hourly

21   invoices up to that point in time.

22        Do you believe you would have been entitled to

23   any additional fee on the project?

24        MR. GASPARI:  Incomplete hypothetical.

25        THE WITNESS:  Well, the plans are not the end

1    of the project.  The plans are almost just the beginning

2    of the project because, you know, there's the

3    coordination with the contractor, there's a coordination

4    with all the subcontractors.

5         There's -- you know, there's a lot of work to

6    do beyond the plans.

7         The plans are the easiest, simplest things to

8    do because we can control those.

9         It's coordinating with all the other people on

10   the job, and that requires a tremendous amount of work

11   and energy.

12   Q.   Well, did the scope of services agreement you

13   had with Salazar -- did you understand it to -- to

14   require work beyond getting the plans submitted for

15   billing?

16   A.   Yes.

17   Q.   And where -- was that spelled out in your

18   contract?

19   A.   I don't recall.

20   Q.   Assume for a moment that your scope of

21   services required you to -- only to prepare a plan of

22   construction drawings to be put out to bid and you had

23   been paid on an hourly basis for all that work.

24        Do you believe you'd be entitled to an

25   additional fee?

1           MR. GASPARI:  Incomplete hypothetical and

2      misstates the testimony on the record.

3           THE WITNESS:  I wouldn't take the job.

4           Again, our insurance company wants us to be

5      involved in the construction, not only doing the plans,

6      but they want us to be involved in administering the

7      contract to the contractors and coordinate the

8      construction on the job site.

9      BY MR. O'BRIEN:

10     Q.    Why does your insurance company want you to do

11     that?

12     A.    Because that's where all the problems happen.

13     Q.    What do you mean by "problems"?

14     A.    That's the coordination aspect.

15          I mean, the plans are -- we can control.

16     That's the easy part.

17          But the contractors come in there, you know,

18     they need to -- they need somebody to coordinate with

19     all their materials.  They need to match up the heights,

20     and flooring materials, and various things.

21          Tremendous amount of work.  Getting things in

22     and out of the Four Seasons is not an easy task.  They

23     have a very tough homeowners' association.  They have

24     very tough rules.

25          You know, we're always involved in that.

1    We're always involved in the construction.

2    Q.   What was your understanding of Rob Salazar's

3    job, what his role would be in the construction?

4    A.   We always do that on Salazar's jobs.

5    MR. GASPARI:  No.  That's not his question.

6    BY MR. O'BRIEN:

7    Q.   What was your understanding as to what Rob

8    Salazar's job -- role would be during construction on

9    the Rovens' project?

10    MR. GASPARI:  Lacks foundation.

11    THE WITNESS:  What -- you mean when it's under

12    construction?

13    MR. O'BRIEN:  Right.

14    THE WITNESS:  We'd be coordinating the

15    construction with Rob.

16    MR. GASPARI:  That's not his question.  He's

17    asking what Rob's job was.

18    THE WITNESS:  Oh.

19    MR. GASPARI:  If you know.

20    THE WITNESS:  I don't know what Rob's job was.

21    BY MR. O'BRIEN:

22    Q.   Wasn't he the project manager?

23    A.   Yes.

24    Q.   So what role would the project manager have --

25    would have -- what role would have the project manager

1    legal conclusion.

2        THE WITNESS:  Yes.

3    BY MR. O'BRIEN:

4       Q.    So it's your position that the Rovens can't

5    use the plans unless they retain you through the entire

6    course of the project?

7        MR. GASPARI:  Calls for legal conclusion.

8        THE WITNESS:  Yes.

9    BY MR. O'BRIEN:

10      Q.    So is it your position that the Rovens can't

11   use the plans on the project because you weren't paid

12   enough?

13       MR. GASPARI:  Argumentative.  Misstates his

14   testimony.

15       THE WITNESS:  No.

16   BY MR. O'BRIEN:

17      Q.    Well, if at the time -- if at the point in

18   time where you were terminated -- if the -- if -- if the

19   Rovens had agreed to buy a license for using the plans,

20   would you have allowed them to use the plans?

21       MR. GASPARI:  Calls for speculation.

22       THE WITNESS:  Yes.

23   BY MR. O'BRIEN:

24      Q.    And how much would you have charged for a

25   license for using the plans?

1      A.    Yeah.

2      Q.    -- or person?

3            MR. O'BRIEN:  All right.  I would like to mark

4      as Exhibit 1 -- is a document dated June 5th, 2006,

5      proposal to Mr. Salazar, Salazar Designs, Inc.

6            (Exhibit No. 1 was marked for Identification.)

7      BY MR. O'BRIEN:

8      Q.    Do you recognize this document?

9      A.    Yes.

10     Q.    Is this your contract with Mr. Salazar for the

11     services you provided on the -- on the Rovens project?

12     A.    It looks like it.

13     Q.    If you could flip to the second to last page

14     there, is that your signature -- second to last.

15     A.    Oh.  Yes.

16     Q.    Now, do you know if at any time you entered --

17     or the terms of this contract were modified?

18     A.    No.

19     Q.    So I'd like you to take a look at the heading

20     "Design Objective II."

21           It says -- "Objective of our work on this

22     project is to prepare architectural construction

23     drawings for the above mentioned residential unit."

24           Was that your understanding of what the

25     objective of your work on the project was?

Theodore Brown 2/28/2008 9:30:00 AM

1    a little bit of everything.

2        I mean, we've even gone and picked up carpets

3    and taken them to clients' places.

4        When Rob picks up the phone and when we're

5    working with him and he needs something on the job and

6    he can't do it and asks us to do it, we just do it.

7    Q.    So if the contract was, as you understood it,

8    on an as-call basis, could Salazar have stopped using

9    your services after you'd completed the drawings or the

10    plans?

11        MR. GASPARI:  Calls for legal conclusion.

12        THE WITNESS:  You know -- no.

13        No, because he knows we wouldn't work with him

14    on that.

15    BY MR. O'BRIEN:

16    Q.    What do you mean, you wouldn't work with him?

17    A.    Rob knows that we're heavily involved with the

18    construction.  We're always involved with construction

19    with Rob, meaning going to the site and -- and

20    monitoring the site construction and such, and we

21    wouldn't do any job with anybody if we weren't involved

22    in that.

23        We want to make sure our artistic vision gets

24    completed.

25    Q.    So when you say involved -- or monitoring the

1  site, are you talking about acting as a -- as a -- like

2  a general contractor of sorts?

3  A.  No.  No.

4  Q.  Are you talking about project management?

5  A.  Yes.

6  Q.  So --

7  A.  It's actually project coordination.

8  Q.  Project coordination?

9  A.  It's not management.  It's more coordination.

10  Q.  And would project -- what was your

11  understanding of what project coordination would

12  involve?

13  A.  Any discrepancies that come up on site, where

14  the electrical lines go, where the plumbing lines go,

15  you know, any coordination on the site that -- where

16  there might be some conflicts in the drawings or stuff

17  we didn't anticipate.

18  Q.  I'm trying to understand why you would -- if

19  you believe the contract was on an as-call basis, what

20  -- on what basis -- what basis did you have to believe

21  that you would be performing the project coordination

22  services?

23  A.  Just on the last projects we've done with Rob

24  Salazar.  That's the way it always works.

25  Q.  But when you started this particular project,