1    FOLGER LEVIN & KAHN LLP
     Michael F. Kelleher (CSB No. 165493, mkelleher@flk.com)
2    Kevin P. O'Brien (CSB No. 215148, kobrien@flk.com)
     Embarcadero Center West
3    275 Battery Street, 23rd Floor
     San Francisco, CA 94111
4    Telephone: (415) 986-2800
     Facsimile: (415) 986-2827
5
     BREALL & BREALL
6    Joseph M. Breall (CSB No. 124329, jmbreall@breallaw.com)
     1255 Post Street, Suite 800
7    San Francisco, CA 94109
     Telephone: (415) 345-0545
8    Attorneys for Plaintiffs and Counter Defendants.

9                        UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11

12   LOUIS ROVENS, ADRIENNE ROVENS,          Case No. C 07-05473 CRB
     and RAYMOND BREGANTE and
13   JEFFREY M. WHITE as Trustees of the     **REPLY MEMORANDUM OF POINTS
     Michael W. Rovens and Elise D. Shanfeld  AND AUTHORITIES IN SUPPORT OF
14   Irrevocable Trust,                       PLAINTIFFS AND COUNTER
                                              DEFENDANTS' MOTION FOR LEAVE TO
15                Plaintiffs,                  FILE THIRD-PARTY COMPLAINT**

16        v.                                  **Judge:      Hon. Charles R. Breyer
                                              Date:        July 11, 2008
17   THEODORE BROWN & PARTNERS,               Time:        10:00 a.m.
     INC.                                     Courtroom:   8, 19th Floor**
18
                  Defendant.
19

20
     AND RELATED COUNTER CLAIMS
21

22                    I.    INTRODUCTION

23        Theodore Brown & Partners, Inc. ("TBP") bases its opposition to the Rovens Parties'

24   Motion for Leave to File a Third-Party Complaint (the "Motion") on inflammatory accusations

25   that the Rovens Parties are attempting an "eleventh-hour ruse" and engaging in a "brazen attempt

26   to complicate and delay resolution of this case."  While TBP's response is filled with colorful

27   language, it is devoid of merit.  TBP provides no valid reason why this Court should not exercise

28   the discretion expressly provided by Rule 14 of the Federal Rules of Civil Procedure ("Rule 14")

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

1    and allow the Rovens Parties to pursue their derivative implied contractual indemnity claim

2    against Salazar Designs LLC ("Salazar Designs") in this action.  The Court should reject TBP's

3    arguments and grant the Rovens Parties' Motion for the following four reasons:

4          First, TBP's claim of "great prejudice" is wrong and misplaced – prejudice will only result

5    if this motion is denied because denial may cause a second trial with the same witnesses and

6    evidence on the central issue before this court – whether the Rovens-Salazar-TBP contract

7    allowed the Rovens to use the plans they paid TBP for.  This issue is central to the dispute as it is

8    the subject of a pending motion for summary judgment filed by the Rovens Parties that will be

9    heard on July 25, 2008.  TBP has not and can not identify any extra expense or other prejudice it

10   will suffer should Salazar Designs become a party to this case.  Salazar Designs' principal,

11   Roberto Salazar, will be an essential witness in this case regardless of the addition of the Rovens

12   Parties' proposed third-party complaint (both TBP and the Rovens Parties have identified Salazar

13   as a potential expert at trial).  The discovery necessary for the Rovens Parties' third-party

14   complaint is complete – Salazar has been deposed in this case, and all of the documents related to

15   Salazar Designs' role in the underlying facts have been produced by all parties (including

16   Salazar) in this litigation and/or the related state court litigation.  Judicial economy and avoidance

17   of the expense and unfairness of two trials with potentially conflicting results requires that the

18   motion for leave to file the third-party complaint be granted.

19         Second, TBP cannot establish the Rovens Parties should have been aware of their claim

20   for indemnity against Salazar Designs as a result of TBP's cease and desist letters, the Rovens

21   Parties' Complaint, TBP's Counter-Claim or the Rovens Parties' indemnity agreement with

22   Orland Diaz-Azcuy Design Associates ("ODADA") because none of those documents made clear

23   the fact that TBP was alleging to have entered an implied agreement with Salazar Designs that

24   was contrary to the express language of TBP's contract with Salazar Designs.  Such facts were

25   revealed for the first time during the deposition of Theodore Brown and form the sole basis for

26   the Rovens' Parties third-party claim against Salazar Designs.

27         Third, TBP's conclusory assertion that the Rovens Parties could have filed a third party

28   complaint against Salazar Designs at any time before or after the bankruptcy ignores the actual

1   facts and circumstances that the Rovens Parties were faced with.  The Rovens Parties were not

2   aware of their indemnity claim until after Salazar Designs' predecessor filed for bankruptcy and

3   the Rovens Parties could not pursue claims against Salazar Designs, the successor of an entity in

4   bankruptcy, until obtaining clarification from the bankruptcy court.

5         Fourth, TBP's assertion that the Rovens Parties' claim against Salazar Designs is "futile"

6   completely mischaracterizes the nature of the Rovens Parties' proposed claim.  The Rovens

7   Parties are merely seeking to impose successor liability on Salazar Designs under clear and well

8   established principles of California law and are not seeking to impose "outside reverse piercing of

9   the corporate veil" as TBP contends.

## II.    ARGUMENT

### A.    Granting the Motion for Leave to File Will Not Prejudice TBP and Will Prevent the Prejudice of a Second Trial With Potentially Conflicting Results on the Issues Before This Court.

14        Rule 14 is designed to "avoid circuity of actions and to expedite the resolution of

15  secondary actions arising out of or in consequence of the action originally instituted." *Colton v.*

16  *Swain*, 527 F.2d 296, 299 (7th Cir. 1975).  The rule is construed liberally and in favor of allowing

17  third-party actions because it "guarantees consistent results [and] saves the time and cost involved

18  in the needless repetition of evidence at a subsequent trial." *Id.*  While courts have discretion to

19  disallow the filing of a third-party complaint when doing so will prejudice the original plaintiff,

20  "the court must balance the benefits derived from . . . settling related matters in one suit . . .

21  against the potential prejudice to the plaintiff and third-party defendants." *Gross v. Hanover Ins.*

22  *Co.*, 138 F.R.D.53, 55-56 (S.D.N.Y. 1991).

23        The copyright claims before the court and the Rovens' Parties proposed third-party

24  complaint turn on a central issue – whether TBP's written hourly contract with Salazar, the

25  Rovens' former interior designer, for the preparation of remodel plans gave the Rovens the right

26  to use the plans drawn by TBP to build the remodel.  TBP prepared these drawings under a

27  written hourly contract that allowed termination at any time, had no termination fee, no

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

REPLY RE MOTION FOR LEAVE TO FILE THIRD-
PARTY COMPLAINT; CASE NO. C 07-05473 CRB

1    restrictions on the owners' use of the drawings for the remodel, and no guarantee that TBP would

2    have any role in the remodel other than preparing drawings as requested on an hourly basis.  The

3    Ninth Circuit's decision in *Foad Consulting Group v. Musil Govan Azzalino*, 270 F.3d 821, 829

4    n.12 (9th Cir. 2001), held that an owner who has paid for preparation of copyrighted plans

5    receives an implied license to use and modify those plans as a matter of law because without such

6    an implied license, an architect could blackmail an owner using copyright claims after

7    termination from a project.

8         In an attempt to avoid the controlling authority of the *Foad* case, Theodore Brown of TBP

9    and Roberto Salazar have concocted a story that they had an "understanding" that TBP could not

10   be terminated from the project without additional copyright payments despite the clear language

11   of the contract.  The Rovens Parties learned of this story of the "understanding" through the

12   recent depositions of Brown and Salazar (and not through Brown's demand letters of last summer

13   as TBP argues in its opposition).

14        This story of the Brown-Salazar "understanding" about the TBP contract is central to both

15   the copyright claims (e.g., did the Rovens have a license to use the plans) and the indemnity

16   claims of the proposed third-party complaint (e.g., did Salazar enter into an "understanding"

17   contrary to his instructions from the Rovens).  The same witnesses and documents and the same

18   events will determine the outcome of this issue for both the copyright and indemnity claims.

19        There will be no prejudice to TBP in bringing Salazar before the court for a global

20   resolution of these issues.  Roberto Salazar has already been deposed and both parties have

21   already produced all documents relevant to Salazar Design's involvement in the Project.  Both

22   TBP and the Rovens Parties have identified Salazar as a potential expert witness at trial.  The

23   Rovens Parties claims are completely derivative of and dependent on the outcome of TBP's

24   claims against the Rovens Parties and will, thus, rise or fall depending on the resolution of TBP's

25   case.

26        Moreover, the claim of prejudice due to delay has no merit.  First, the Rovens Parties are

27   still ready to go to trial in August if necessary, and the fact that discovery on the Salazar issues

28   has already been completed means that no delay is necessary.  Second, even if a delay were

1    appropriate to allow Salazar to get ready, TBP should not be allowed to complain about a short

2    delay because TBP joined the Rovens Parties in seeking a May 2009 trial date at the last case

3    management conference in April.  This case has moved exceptionally quickly since the April case

4    management conference, and can continue to do so.  Although the court ordered an expedited

5    schedule at that case management conference, a minor delay in that schedule would still have this

6    case ready for trial in less than one year from the filing last October.

7         Accordingly, it is clear that the benefits that will result by adding the proposed third-party

8    complaint—the efficient resolution of the Rovens Parties' secondary claims, the avoidance of the

9    risk of inconsistent results and the saving of judicial resources—outweigh whatever minor delay

10   or inconvenience, if any, TBP will be subjected to.

11   **B.    TBP's Cease And Desist Letters, The Complaint And The Counter-Claim Did**
12   **Not Put The Rovens Parties On Notice Of Salazar Design's Breach Of**
      **Contract.**

13   The Rovens Parties' proposed third-party complaint against Salazar Designs turns on the

14   question of whether Salazar Designs breached its agreement with the Rovens when Salazar

15   Designs retained TBP to work on the project to remodel the Rovens' condominium (the

16   "Project").  As shown by the declaration of Jeffrey White filed in support of this Motion, the

17   Rovens intended and understood that as a result of their agreement with Salazar Designs, Salazar

18   Designs would retain TBP on an hourly basis to prepare the plans necessary to commence

19   construction on the Project.  The contract that Salazar Designs entered with TBP (the

20   "TBP/Salazar Contract") appeared to comply with the Rovens Parties' understanding.  If the

21   depositions of Mr. Brown and Mr. Salazar are to be believed, it is now apparent that Salazar

22   Designs may have misled and breached its agreement with the Rovens by retaining TBP

23   according to secret terms that allow TBP to withhold its plans from the Rovens despite having

24   been paid for its work.

25   The Rovens Parties did not become aware of this fact, which was and could only have

26   been known by TBP and Salazar Designs, until the February 28, 2008 deposition of Theodore

27   Brown when Brown testified about his secret understanding with Salazar Designs.  There is

28

1    nothing in TBP's Cease and Desist letters, the Rovens Parties' Complaint, TBP's Cross-Claim or

2    any other document that previously revealed the existence of TBP's alleged secret understanding

3    with Salazar Designs.

4         The Cease and Desist Letters TBP sent to Whitehouse Builders, ODADA and others

5    assert only copyright infringement.  TBP's letters do not assert that, according to TBP's alleged

6    agreement with Salazar Designs, the Rovens Parties could only continue to use TBP's plans if

7    TBP were retained to perform "contract coordination" services or TBP were paid an additional

8    licensing fee.  In fact, TBP's letters do not even refer to TBP's alleged secret understanding with

9    Salazar Designs.

10        Likewise, TBP's counter-claim does not refer to TBP's alleged secret understanding with

11   Salazar Designs.  Thus, the fact that TBP threatened and then ultimately brought copyright

12   infringement claims against the Rovens Parties did not serve to apprise the Rovens Parties of

13   Salazar Designs' breach of contract.

14        Moreover, the fact that the Rovens Parties anticipated copyright claims from TBP and

15   Salazar Designs does not reflect an understanding that Salazar Designs breached its contract with

16   the Rovens.  The language of the Rovens' indemnity agreement with ODADA clearly indicates

17   that that agreement was entered so that ODADA could continue working on the project

18   notwithstanding TBP's and Salazar Design's potential copyright claims and does not refer to or

19   reflect an understanding of potential affirmative claims that the Rovens may have against Salazar

20   Designs.

21        Additionally, the Rovens Parties' Complaint, which seeks declaratory relief against TBP

22   based on the Rovens' implied license defense, shows that at that time the Complaint was filed the

23   Rovens Parties still believed and understood that the terms of the TBP/Salazar Contract barred

24   TBP's copyright claims.

25        Accordingly, TBP's assertion that the Rovens Parties' delayed in seeking leave is

26   unjustified and should be rejected.

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-6-

1

2

**C.    TBP Cannot Refute That It Was Necessary For The Rovens Parties To Obtain Permission From The Bankruptcy Court Before Asserting Claims Against Salazar Designs.**

3

4

5

6

7

8

9

10

11

12

13

14

TBP's attempt to attack the Rovens Parties reliance on the bankruptcy proceedings is misguided.  First, it is clear from the parties' motion and the declaration of Jeffrey White that the Rovens Parties only became aware of the facts giving rise to their claim against Salazar Designs until after Roberto Salazar and Salazar Designs, Inc. filed for bankruptcy.  Second, TBP ignores the fact that when Roberto Salazar and Salazar Designs, Inc. filed for bankruptcy in February 2008, the bankruptcy court's automatic stay precluded the Rovens Parties from pursuing claims against them in other forums.  When Salazar Designs, Inc. continued to do business as Salazar Designs LLC, there was a legitimate question as to whether the Rovens Parties' claims against Salazar Designs LLC, as the successor in interest to Salazar Designs Inc., should be resolved as part of the bankruptcy proceedings or could be pursued in other courts.  The Rovens Parties sought to resolve this question with the bankruptcy court before filing this motion in order to avoid wasting this Court's time and resources and not merely as a "ruse" to delay trial.

15

16

17

**D.    The Rovens Parties' Claim Against Salazar Designs As The Successor In Interest To Salazar Designs, Inc. Is Based On Well Established Legal Principles And Is, Thus, Not "Futile."**

18

19

20

21

22

23

24

25

26

27

28

TBP's assertion that the proposed third-party complaint is based on improper "outside reverse piercing of the corporate veil" mischaracterizes the Rovens Parties' claim and serves only to confuse the real issues.  As made clear by the Rovens Parties' proposed third party complaint, the Rovens Parties' claim against Salazar Designs LLC is based on its liability as a successor corporation to Salazar Designs Inc.  "Successor corporation" liability applies when "one corporation sells or transfers all of its assets to another corporation . . . [and] the purchasing corporation is merely a continuation of the selling corporation."  *McClellan v. Northridge Park Townhome Owners Assoc.*, 89 Cal. App. 4th 746, 753 (2001) (emphasis in original).  Thus, the cases TBP cites to argue that the Rovens Parties' claim is "futile"—e.g., *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510 (2008)—are distinguishable because they do not address the issue of "successor corporation" liability.

1

### III.   CONCLUSION

2

3        For the foregoing reasons, the Court should reject TBP's arguments in opposition to the

4    Rovens Parties' Motion and grant the Rovens Parties leave to file their proposed third-party

5    complaint.

6    Dated: June 19, 2008                    FOLGER LEVIN & KAHN LLP

7                                            /s/
                                             Michael F. Kelleher
8                                            Attorneys for
                                             Plaintiffs and Counter Defendants
9

10   81052\2001\606440.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28