1  FOLGER LEVIN & KAHN LLP
   Michael F. Kelleher (CSB No. 165493, mkelleher@flk.com)
2  Kevin P. O'Brien (CSB No. 215148, kobrien@flk.com)
   Embarcadero Center West
3  275 Battery Street, 23rd Floor
   San Francisco, CA  94111
4  Telephone: (415) 986-2800
   Facsimile: (415) 986-2827
5
   BREALL & BREALL
6  Joseph M. Breall (CSB No. 124329, jmbreall@breallaw.com)
   1255 Post Street, Suite 800
7  San Francisco, CA 94109
   Telephone:  (415) 345-0545
8
9  Attorneys for Plaintiffs and Counter Defendants.

                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11

12

13  LOUIS ROVENS, ADRIENNE ROVENS,          Case No. C 07-05473 CRB
    and RAYMOND BREGANTE and
14  JEFFREY M. WHITE as Trustees of the      **REPLY IN SUPPORT OF PLAINTIFFS
    Michael W. Rovens and Elise D. Shanfeld  AND COUNTER DEFENDANTS' MOTION
15  Irrevocable Trust,                        FOR SUMMARY JUDGMENT OR IN THE
                                              ALTERNATIVE SUMMARY
16              Plaintiffs,                    ADJUDICATION**

17       v.                                   **Judge:      Hon. Charles R. Breyer
                                              Date:        July 22, 2008
18  THEODORE BROWN & PARTNERS,                Time:        10:00 a.m.
    INC.                                      Courtroom:   8, 19th Floor**
19              Defendant.

20

21
    _____
22  AND RELATED COUNTER CLAIMS

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3
I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT ............................................................................................................ 2

4

        A.      TBP Has Not Raised A Genuine Question Of Material Fact Regarding The
5               Existence Or Scope Of The Rovens' Implied License To Use TBP's Plans
                For The Project ................................................................................................ 2

6
                1.      Brown's Undisclosed And Unreasonable Expectation Of Continued
7                       Work On The Project Contradicts The Express Language Of TBP's
                        Contract And Is Irrelevant To The Parties' Mutual Intent ...................... 3

8               2.      Brown's Undisclosed "Understanding" With Salazar Is Irrelevant
                        To The Parties' Mutual Intent Because It Contradicts The Contract
9                       And Is Not Supported By The Evidence .................................................. 4

10              3.      TBP Has Failed To Raise Genuine Dispute Regarding The Fact
                        That Salazar Was Acting As The Rovens' Agent In Contracting
11                      With TBP For The Project ...................................................................... 6

12              4.      TBP's Attempt To Distinguish <u>Foad</u> Is Based On A
                        Mischaracterization Of Both The Holding Of <u>Foad</u> And The Facts
13                      Of This Case And, Thus, Fails ................................................................ 8

        B.      TBP Has Not Refuted The Fact That It Knowingly Failed To Disclose To
14              The Copyright Office The Derivative Nature Of Its Plans ................................... 9

15      C.      TBP Cannot Establish Whitehouse's Liability Because, As A Matter Of
                Law, Whitehouse's Building-Out The Rovens' Remodel Is Not Copyright
16              Infringement .................................................................................................. 11

        D.      TBP Can Not Establish Walters' Liability Because Walters Did Not Copy
17              TBP's Plans .................................................................................................. 13

III.    CONCLUSION ...................................................................................................... 13

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4
Beckwith Builders, Inc. v. Depietri
   2006 WL 2645188 (D.N.H.) ............................................... 11

5
Brant v. California Dairies
6      4 Cal. 2d 128 (1935) .................................................... 3

7
Effects Associates, Inc. v Cohen
   908 F.2d 555 (9th Cir. 1990) ............................................. 6

8
Foad Consulting Group Inc. v. Azzalino
   270 F.3d 821 (9th Cir. 2001).................................... 1, 3, 8, 9

9
Founding Members of the Newport Beach Country Club v. Newport Beach
   Country Club
10      109 Cal. App. 4th 944 (2003) ........................................ 3

11
Fraser v. Goodale
   342 F.3d 1032 (9th Cir. 2003)........................................... 1

12
GB Marketing USA Inc., v. Gerlsteiner Brunnen GmbH & Co.
   728 F. Supp. 763 (W.D.N.Y. 1991) .................................. 10

13
I.A.E. Inc. v. Shaver
14      74 F.3d 768 (7th Cir. 1996).......................................... 4

15
Johnson v. Jones
   149 F.3d 494 (6th Cir. 1998)............................................ 9

16
Lake Nacimiento Ranch Co. v. San Luis Obispo Cty.
   841 F.2d 872 (9th Cir. 1987)............................................ 1

17
Lamps Plus, Inc. v. Seattle Lighting Fixture Co.
   345 F.3d 1140 (9th Cir. 2003)......................................... 10

18
Meisner Brem Corp. v. Mitchell
19      313 F. Supp. 2d 13 (D.N.H. 2004) ................................. 3

20
Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.
   -- F.3d --, 2008 WL 2420869 (10th Cir.) .......................... 10

21
Miller v. Stults
   143 Cal. App. 2d 592 (1956).......................................... 5

22
Nat.'l Med. Care, Inc. v. Espiritu
   284 F. Supp. 2d 424 (S.D. W.Va. 2003) .......................... 11

23
Netbulav. Bindview Dev. Corp.
24      516 F. Supp. 2d 1137 (N.D. Cal. 2007)
   (citing Bourne v. Walt Disney Co.
25      68 F.3d 621 (2nd Cir. 1995)) ..................................... 1, 2

26
Triton Energy Corp. v. Square D Do.
   68 F.3d 1216 (9th Cir. 1995)........................................... 8

27
United States v. Approximately $44,888.35 in U.S. Currency
   385 F. Supp. 2d 1057 n.4 (E.D. Cal. 2005)......................... 5

28
Van't Rood v. County of Santa Clara

**TABLE OF AUTHORITIES**
(continued)

Page

113 Cal.App.4th 549 (2003) ................................................................................... 6

Varni Bros. Corp. v. Wine World, Inc.
  35 Cal. App. 4th, 880 (1995) ............................................................................. 5

Yankee Candle Co. v. New England Candle Company, Inc.
  14 F. Supp 2d 154 (D. Mass 1998) ................................................................... 12

**STATUTES**

17 U.S.C. § 102 ........................................................................................................ 11

# I.    INTRODUCTION

Because Plaintiffs and Counter Defendants are seeking summary judgment (or summary adjudication) on Theodore Brown & Partners, Inc.'s ("TBP") counter claims for copyright infringement and unfair competition, TBP is the plaintiff for purposes of this motion. Accordingly, in order to avoid summary judgment, TBP <u>must</u> demonstrate a genuine issue of material fact exists as to the essential elements of its claims for which it bears the burden of proof at trial.[1]  <u>Lake Nacimiento Ranch Co. v. San Luis Obispo Cty.</u>, 841 F.2d 872, 876 (9th Cir. 1987). TBP cannot rely on mere allegations or denials to establish a question of material fact, but <u>must</u> put forward admissible evidence refuting the specific issues raised in the Plaintiffs and Counter Defendants' motion.[2]  <u>Id.</u>  TBP has failed to meet its burden and, thus, this Court should grant the Plaintiffs and Counter Defendants' motion, in whole or in part, for the following four reasons:

<u>First,</u> TBP has not raised a genuine question of material fact regarding the scope of the Rovens' implied license.  TBP's evidence of its subjective "expectation" and "understanding" that it would be retained throughout the Project is irrelevant to the question of the parties' mutual, objective intent and is contradicted by the express language of TBP's contract.  Moreover, TBP cannot refute the evidence establishing that Salazar was the Rovens' agent on the Project and has responded with only denials and conjecture based on immaterial facts.  Additionally, TBP's attempt to distinguish <u>Foad Consulting Group Inc. v. Azzalino</u>, 270 F.3d 821, 829 (9th Cir. 2001) misreads the holding of <u>Foad</u> and ignores the undisputed facts regarding TBP's knowledge of and relationship with the Rovens.

---

[1] TBP incorrectly argues that the Plaintiffs and Counter Defendants bear the burden of proving the existence of an implied license in this case.  However, "[w]here, the existence of a license is not in dispute," as is the case here, "and only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized."  <u>Netbulav. Bindview Dev. Corp.</u>, 516 F. Supp. 2d 1137, 1151 (N.D. Cal. 2007) (citing <u>Bourne v. Walt Disney Co.</u>, 68 F.3d 621, 631 (2nd Cir. 1995).

[2] TBP asserts the fantastic position that, as the "non-moving" party, TBP can defeat summary judgment based on hearsay and other inadmissible evidence.   While it is true that the <u>form</u> of evidence need not be admissible at the summary judgment stage, to be properly considered, the <u>contents</u> of the evidence must be capable of being presented in an admissible form at trial.  <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1037 (9th Cir. 2003).  TBP's assertion that it need not rely on admissible evidence is, thus, an overstatement.

REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT;
CASE NO. C 07-05473 CRB

1       <u>Second,</u> TBP has not put forward any evidence refuting the fact that TBP's plans are

2   derivative of the original layout, are based on Salazar's and not TBP's designs and are, thus, not

3   original.  Nor has TBP sought to deny or refute the fact that it knowingly suppressed the

4   derivative, unoriginal nature of its plans in its copyright application.  Accordingly, because

5   Plaintiffs and Counter Defendants have established TBP's copyright misuse, TBP's copyright is

6   unenforceable.

7       <u>Third</u>, TBP has not put forward any evidence refuting the fact that Counter Defendant

8   Whitehouse <u>did not</u> infringe TBP's copyright and, thus, does not belong in this case.  TBP's

9   claims against Whitehouse are based solely on the theory that Whitehouse infringed by using

10  TBP's plans to build-out the Rovens' condominium.  This theory fails as a matter of law because

11  (1) TBP's plans are only entitled to copyright protection as a "pictorial, graphic or sculptural

12  work" and (2), under the controlling authority; the building of an item depicted in plans protected

13  as a "pictorial, graphic or sculptural work" is <u>not</u> copyright infringement.

14      <u>Fourth</u>, TBP has no evidence supporting its claims against Walters and has failed to even

15  address Walters in its opposition.

## II.     ARGUMENT

### A.     TBP Has Not Raised A Genuine Question Of Material Fact Regarding The Existence Or Scope Of The Rovens' Implied  License To Use TBP's Plans For The Project.

19      TBP has conceded that the Rovens and their contractors "had a non-exclusive license to

20  use the plans that TBP . . . prepare[d]."  (Brown Decl., ¶ 6)  Because the issue in this case is the

21  <u>scope</u> of the license granted and not whether or not an implied license exists, TBP has the burden

22  of proving that the Rovens' use of the Plans fell outside of the scope of the license and, thus,

23  constitute infringement. <u>Netbulav. Bindview Dev. Corp.</u>, 516 F. Supp. 2d 1137, 1151 (N.D. Cal.

24  2007) (citing <u>Bourne v. Walt Disney Co.</u>, 68 F.3d 621, 631 (2nd Cir. 1995)).  While TBP has

25  alleged that the implied license was conditioned on TBP's continued work on the Project, TBP

26  has failed to establish any specific questions of material fact supporting its allegations.

27      TBP attempts to support this allegation in four ways.  First, Brown asserts that it was his

28  "expectation that [TBP] would provide architectural services to the Rovens' condominium project

-2-

1   through to completion."  Second, Brown asserts that he and Salazar "had an understanding, based

2   upon [their] past experience, that Mr. Salazar, the Rovens, and the contractors working on the

3   Rovens' condominium project had a non-exclusive license to use the plans that [TBP] prepared,

4   so long as my firm was working on the project."  Third, TBP asserts that the Rovens have failed

5   to establish that Salazar was their agent in contracting and working with Salazar and, thus, no

6   contract exists between TBP and Salazar from which to imply a license.  Fourth, TBP attempts to

7   distinguish the holding of Foad Consulting Group Inc. v. Azzalino, 270 F.3d 821, 829 (9th Cir.

8   2001), the controlling Ninth Circuit authority establishing, as a matter of law, that the Rovens

9   have an implied license to use TBP's plans.  In each instance, however, TBP's arguments lack

10  merit and TBP's "evidence" is insufficient to raise a genuine dispute of material fact.

11          **1.      Brown's Undisclosed And Unreasonable Expectation Of Continued
                       Work On The Project Contradicts The Express Language Of TBP's
12                     Contract And Is Irrelevant To The Parties' Mutual Intent.**

13          TBP first attempts to limit the scope of the Rovens' implied license by pointing to

14  Brown's statement that "it was my expectation that my firm would provide architectural services

15  to the Rovens' condominium project through to completion."  Brown's statement does not raise a

16  question of fact, however, because it does not address the parties' objective, mutual intent and

17  contradicts the express terms of TBP's contract.  Founding Members of the Newport Beach

18  Country Club v. Newport Beach Country Club, 109 Cal. App. 4th 944, 956 (2003) ("[I]t is the

19  objective intent, as evidenced by the words of the contract, rather than the subjective intent of one

20  of the parties, that controls interpretation."); Brant v. California Dairies, 4 Cal. 2d 128, 134

21  (1935) (evidence of party's intent in direct conflict with "outward manifestation" of objective

22  intent irrelevant to contract interpretation).   Despite TBP's claim that it is the "architect's intent"

23  that matters, like with any contract, it is only the parties' outward manifestations of mutual intent

24  and not the architects' undisclosed, subjective intent that governs the existence and scope of an

25  implied license.  See Foad Consulting Group Inc. v. Azzalino, 270 F.3d 821, 829 (9th Cir. 2001);

26  accord Meisner Brem Corp. v. Mitchell, 313 F. Supp. 2d 13, 18 (D.N.H. 2004) ("In making its

27  determination, the Court does not focus on the subjective intent of the putative licensor, but rather

28  makes an objective inquiry into the facts that manifest contractual intent.")

1    TBP has not put forward any evidence that Brown disclosed his "expectations" to either

2    the Rovens or Salazar at the time the contract was entered.  Moreover, the language of TBP's

3    written agreement for the Project makes it abundantly clear the parties' mutual intent was that the

4    Rovens would have an implied license to use the plans TBP prepared regardless of whether TBP

5    continued to work on the project.  The contract provides that:

6        1.    The "objective" of the contract was to "prepare architectural construction drawings

7              for the [Rovens'] residential unit" that would be "submitted to general contractors

8              for price quotes;"

9        2.    TBP's <u>only</u> compensation for completing the "objective" would be its hourly fee

10             for preparing the plans;

11       3.    After completion of the "objective," TBP would only provide "additional services"

12             on the project, such as additional architectural services, "as requested;"

13       4.    TBP could be terminated from the Project at will and at any time.

14   (Brown Decl, Ex. A.)  These contractual terms, which TBP proposed and agreed to, <u>do not</u>

15   support an inference that Brown's undisclosed "expectation" was ever made part of TBP's

16   agreement with Salazar.  Accordingly, Brown's after the fact declaration is not sufficient to avoid

17   summary judgment.  <u>See</u> e.g., <u>I.A.E. Inc. v. Shaver</u>, 74 F.3d 768, 776 (7th Cir. 1996)

18   ("[A]lthough [the plaintiff] tells us that he anticipated he would be the architect to take the Project

19   to completion, nothing in his contract gives the slightest indication of that belief.").

20         **2.**    **Brown's Undisclosed "Understanding" With Salazar Is Irrelevant To**
                   **The Parties' Mutual Intent Because It Contradicts The Contract And**

21                 **Is Not Supported By The Evidence.**

22       TBP next attempts to limit the scope of the Rovens' implied license by asserting that, as a

23   result of TBP's and Salazar's course of dealing, TBP and Salazar understood that Salazar, and,

24   thus, the Rovens, "would have no right to use the plans without Brown's involvement in the

25   project."  There are two major problems with TBP's argument.  First, TBP cannot rely on its

26   course of dealings to control, vary, or contradict the express terms the express terms of the written

27   agreement.  <u>United States v. Approximately $44,888.35 in U.S. Currency</u>, 385 F. Supp. 2d 1057,

28   1061 n.4 (E.D. Cal. 2005); <u>Varni Bros. Corp. v. Wine World, Inc.</u>, 35 Cal. App. 4th, 880, 889-90

1   (1995).  Like with Brown's undisclosed "expectation," Brown's and Salazar's purported

2   "understanding" would conflict with and vary the express contract terms governing the design

3   objective, scope of services, fees, additional services and termination and would turn what is

4   clearly a terminable, hourly contract for drafting and design services into a long-term contract for

5   project management and ongoing construction support.

6          Second, Brown's "understanding" cannot control because it was never communicated to

7   the Rovens or to Salazar.  <u>Miller v. Stults</u>, 143 Cal. App. 2d 592, 601-02 (1956) ("For evidence of

8   custom to have potency it must be established that the parties to the contract were aware of the

9   existence of the custom.").  Brown has admitted that he does not recall disclosing to the Rovens

10  his "understanding" that TBP could withhold the plans from the Rovens if TBP was not retained

11  through to the completion of the Project:

12              Q.   Did you ever explain to Mr. Rovens when you were talking
                about payment that if he chose not to retain you through the
13              completion of the project you would charge him a license fee for
                his continued use of the plans?
14
                A.   No.
15

16  (Brown Depo. at 124:7-125:4 [Breall Decl., Ex. B].)  Additionally, Brown has offered no

17  evidence that Salazar shared Brown's "understanding."  Salazar <u>did not</u> testify that it was his

18  "understanding" that the Rovens' use of the plans was condition on TBP's continued retention

19  only that he understood that TBP owned the copyright for the plans:

20              Q.  Did you have an understanding as to who might or might not be
                able to use the plans to be drawn by Mr. Brown in the event of
21              termination of the contract?

22              A.  I did.

23              Q.   And what was that understanding?

24              A.  That they were the property of Theodore Brown & Partners.

25  (Salazar Depo., at 129:3-9 [Gaspari Decl., Ex. C].)  The question of who owns a copyright is

26  different from and not necessarily related to the question of who has an implied right to use a

27  copyrighted work.

28

                                                    -5-

1

      **3.**      **TBP Has Failed To Raise Genuine Dispute Regarding The Fact That Salazar Was Acting As The Rovens' Agent In Contracting With TBP For The Project.**

2

3          TBP also attempts to avoid summary judgment by arguing that the Rovens have failed to

4 establish that Salazar was their agent for purposes of negotiating and entering TBP's contract for

5 the Project.  While the issue of Salazar's status as agent is not determinative of the existence or

6 scope of an implied license,[3]  TBP's argument lacks merit because it ignores the undisputed

7 evidence establishing Salazar's contractual, "actual agency" relationship with the Rovens, ignores

8 the undisputed evidencing showing that TBP had actual knowledge that Salazar was the Rovens'

9 agent and relies only on unsupported conjecture and unreasonable inferences based on immaterial

10 facts.

11          Notwithstanding TBP's arguments, there is no genuine dispute regarding Salazar's role as

12 the Rovens' agent on the Project or in entering the contract with TBP.  It is basic, hornbook law

13 that an agency relationship is created by express agreement when the agent agrees to act on behalf

14 of and subject to the control of the principal.  Van't Rood v. County of Santa Clara, 113 Cal. App.

15 4th 549, 571 (2003).  The Rovens clearly established an agency relationship with Salazar as a

16 result of their written contract, the terms of which provide that Salazar would develop the

17 Rovens' floor plans, would interview and negotiate contracts with all of the contractors that

18 would be necessary to develop the Rovens' plans and that the Rovens would review and approve

19 all of the designs, all of the contracts Salazar entered and the budget Salazar proposed for the

20 Project.  (White Decl., Ex. A.)  Moreover, it is undisputed that during the course Salazar's

21 dealings with TBP on the Project he acted as the Rovens' agent—signing the contract with TBP

22 at the Rovens' request, conveying the designs requested by the Rovens to TBP and reporting to

23 the Rovens regarding the status of TBP's work.  (June 6, 2006 Email from Roberto Salazar to Lou

24 Rovens [Breall Supp. Decl., Ex. B]; White Decl., ¶¶ 4-7; Salazar Depo., at 15:15-16:7, 31:3-21,

25

26        [3] TBP incorrectly suggests that the Rovens can not have an implied license without a direct, written contract with TBP.  However, because an implied license can be implied from the
27 parties' words or conduct, the existence of a direct, written contract between the parties is not determinative.  See Effects Associates, Inc. v Cohen,  908 F.2d 555, 558-59 (9th Cir. 1990).

28

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT;
CASE NO. C 07-05473 CRB

1   79:8-79:20 [Breall Supp. Decl. at Ex. A].)

2        Significantly, TBP's challenge to Salazar's agency is completely belied by Brown's own

3   deposition testimony, in which he made clear that he understood that it was the Rovens paying for

4   and directing TBP's work on the project:

5            Q.   Well, what did he [Salazar]  say to you?

6            A.   That he said to the Rovens that we were going to be the
                 architects, because  the Rovens were insisting that there be an
7                architect on the job, and that we'd be the architect F and that he'd
                 pass our bills through the Rovens, and the Rovens would pay him,
8                and he'd pay us.

9   (Brown Depo., at 93:11-16 [Breall Decl., Ex. B].)   Brown even recalls a conversation with Mr.

10  Rovens in which Brown pressed Mr. Rovens to assure payment to TBP:

11           Q.   Well, where did you understand that you would be paid from
                 for the project?
12
             A.   At one of the meetings at our office where Mr. Rovens'
13               brother was there I walked out on the deck with Mr. Rovens, and --
                 and we had a short conversation about payment, and I expressed
14               concern about that, and he stated that if there became any problem
                 he would pay it.
15

16  (Brown Depo. at 43:5-45:5 [Breall Decl., Ex. B].)

17       Likewise, Albert Costa, TBP's lead architect on the Rovens' Project, has admitted that he

18  understood that Salazar was working for the Rovens:

19           Q:  Did Mr. Salazar tell you anything regarding his – what was your
                 understanding as of June 2nd regarding Mr. Salazar's role in this
20               project?

21           A:  Our understanding is that Mr. Salazar was requesting services
                 for this property in the Four Seasons.
22
             Q:  On behalf of a client he had been retained by?
23
             A:  On behalf of a client yes.
24

25  (Costa State Court Depo., 51:22-25; 52:1-4 [Breall Supp. Decl., Ex. C].)   Costa also admitted

26  that he understood that Salazar's work on the project was subject to review and approval by the

27  Rovens:

28           Q:  Mr. Salazar told you throughout the project that he needed to

-7-

1    review the plans and designs with his clients, did he not?

2        A:  Yes.

3        Q:  You understood that Mr. Salazar's client that he needed to
         review the designs and plans with were the Rovens, correct?
4
         A:  Yes.
5

6    (Costa State Court Depo. 233: 13-15, 23; 234: 7-10 [Breall Supp. Decl., Ex. C].)  It is, thus,

7    disingenuous and ineffective for TBP to now argue that Salazar was not the Rovens' agent.

8        TBP's only "evidence" to dispute the Rovens' agency relationship with Salazar consists of

9    the fact that at or before the time that the Rovens terminated Salazar, Jeffrey White requested that

10   TBP enter a new contract with the Rovens and that, following termination, Salazar continued to

11   make payments to TBP.  Neither White's alleged statements nor Salazar's alleged payments, both

12   of which occurred in late 2006, directly or indirectly relate to the relationship that was created by

13   the Rovens' contract with Salazar months earlier in June 2006.  Furthermore, the inference that

14   TBP attempts to draw from these facts is, simply, not supported by the evidence.  By the

15   admission of TBP's lead architect on the project, Costa, TBP did not feel it was necessary to enter

16   a new contract with the Rovens because TBP "already had a prime contract and [were] already

17   engaged in that contract."  (Costa State Court Depo, 3032:6-14 [Breall Supp. Decl., Ex. C].)

18   TBP's evidence amounts to nothing more than conjecture and cannot be relied on to defeat

19   summary judgment.  Triton Energy Corp. v. Square D Do., 68 F.3d 1216, 1221 (9th Cir. 1995)

20   ("The mere existence of a scintilla of evidence in support of the non-moving party's position is

21   not sufficient.")

22           **4.    TBP's Attempt To Distinguish <u>Foad</u> Is Based On A**
                     **Mischaracterization Of Both The Holding Of <u>Foad</u> And The Facts Of**
23                   **This Case And, Thus, Fails.**

24       In a last-ditch effort to avoid summary judgment, TBP argues that <u>Foad Consulting Group</u>

25   <u>Inc. v. Azzalino</u>, 270 F.3d 821, 829 (9th Cir. 2001), the controlling Ninth Circuit authority, is

26   distinguishable because the court in <u>Foad</u> "based" its opinion on the fact that the defendant had

27   already obtained government approval for the plaintiff's plans and would have to incur great

28   expense to re-design the project.  TBP argues that, unlike the defendant in <u>Foad</u>, the Rovens were

-8-

1    not "restricted" to using TBP's plans at the time TBP was terminated.  TBP's argument lacks

2    merit because the <u>Foad</u> court based its decision on the parties' mutual intent as expressed by the

3    parties' written contract and only discussed the "restrictions" that the defendants were faced with

4    as dicta in a footnote.  <u>Foad Consulting Group Inc. v. Azzalino</u>, 270 F.3d 821, 829 n.12 (9th Cir.

5    2001).  Also, TBP's argument is not supported by the facts of this case and ignores the undisputed

6    evidence establishing that the Rovens relied on TBP's plans to purchase millions of dollars worth

7    of custom stone and, thus, were not free to start as "square one" when TBP was terminated.

8    (White Decl., ¶ 8.)

9         TBP's attempt to fit this case into the holding of <u>Johnson v. Jones</u>, 149 F.3d 494 (6th Cir.

10   1998), a Sixth Circuit decision in which no implied license was found, is equally specious.  In

11   <u>Johnson,</u> the court found that no implied license existed, primarily, because of the fact that:

12
             [The Architect] submitted two AIA contracts, both of which
             contained express provisions that he would retain ownership of the
13           drawings, and that those drawings would not be used for
             completion of the Jones house by others, except by written
14           agreement with appropriate compensation.  These contractual
             provisions, although never signed by [the defendant] speak to [the
15           architect's intent; they demonstrate that [the architect] created the
             drawings with the understanding that he would be the architect in
16           charge of the project.

17   <u>Johnson v. Jones</u>, 149 F.3d 494, 500 (6th Cir. 1998).  There are no facts in this case that are

18   remotely similar to the factual situation presented in <u>Johnson</u>,  TBP did not submit any proposed

19   contracts or any other writings to Salazar or the Rovens that expressed its alleged "expectation"

20   regarding the Project.  Nor did TBP orally communicate its "expectation" to the Rovens, despite

21   the opportunity, either before or after its contract was entered.  (Brown Depo., 124:7-125:4

22   [Breall Decl., Ex. B].)

23       **B.    TBP Has Not Refuted The Fact That It Knowingly Failed To Disclose To The
               Copyright Office The Derivative Nature Of Its Plans.**
24

25       Unable to refute the facts establishing that TBP has knowingly, attempted to obtain a

26   copyright on the derivative and unoriginal aspects of its plans, TBP instead tries to shift the focus

27   to the broader question of whether TBP would be entitled to any copyright at all.  However, for

28   purposes of this motion, the Rovens are not asserting that TBP's plans are so unoriginal that they

-9-

1    would not, potentially, be entitled to copyright protection as a derivative work. The issue for this

2    motion, and the issue TBP has ignored, is the question of whether TBP's copyright is

3    unenforceable because TBP has attempted to abuse the copyright process to obtain copyright

4    protection for the aspects of its plans that were copied from the existing layout of the Rovens'

5    apartment or that were designed by Salazar.

6        The Rovens have put forth sufficient evidence to establish that this is, in fact, that case.

7    While TBP is now asserting that it did not base its initial drawings on the Handel Plans

8    themselves, TBP's architect admitted that his initial drawings were based on TBP's

9    measurements and observations of the actual, existing floor plan in the Rovens' condominium.

10   (Costa State Court Depo, 62:15-63:10 [Breall Decl., Ex. C].) Whether TBP copied from

11   drawings or from the actual, physical space, it is undisputed that TBP's plans were not started

12   from scratch but were copied from the work of another architect. See Meshwerks, Inc. v. Toyota

13   Motor Sales U.S.A., Inc., -- F.3d --, 2008 WL 2420869 (10th Cir.) ("[W]e hold . . . that, standing

14   alone, the fact that a work in one medium has been copied from a work in another medium does

15   not render it any less a 'copy.'") (internal quotations omitted). TBP has not offered any evidence

16   to rebut the Rovens' showing.

17       Additionally, TBP has failed to rebut the Rovens showing that Salazar was a co-author of

18   the designs that TBP is now claiming a copyright for, including the octagonal entrance way that

19   TBP relies so heavily on in its claim of originality. TBP's lead architect on the Project admitted

20   that Salazar was not merely "involved" in contributing ideas to the plans, as TBP asserts, but was

21   a collaborator on the designs of the "space" and the "room layouts" and specifically directed TBP

22   to draw the octagonal entrance way. (Costa State Court Deposition, at 124:22-23; 125:8-9;

23   126:6-10, 14-24; 240:17-19 [Breall Supp. Decl., Ex. C].)

24       Accordingly, TBP's attempt to gain a copyright for the copied, unoriginal aspects of its

25   plans renders TBP's copyright unenforceable. GB Marketing USA Inc., v. Gerlsteiner Brunnen

26   GmbH & Co., 728 F. Supp. 763, 774 (W.D.N.Y. 1991); accord Lamps Plus, Inc. v. Seattle

27   Lighting Fixture Co., 345 F.3d 1140, 1143-44 (9th Cir. 2003).

28

REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT;
CASE NO. C 07-05473 CRB

1

2

**C.      TBP Cannot Establish Whitehouse's Liability Because, As A Matter Of Law, Whitehouse's Building-Out The Rovens' Remodel Is Not Copyright Infringement.**

3      The copyrighted drawings at issue in this case, TBP's plans for the interior remodel of the

4   Rovens' condominium, are technical designs that depict functional objects and structures.

5   Copyright law affords such technical designs only "thin" copyright protection.  The actual

6   building of the objects and structures depicted in technical designs does not constitute copyright

7   infringement <u>except</u> in the limited circumstance of designs for "buildings."  Under the

8   Architectural Works Copyright Protection Act, congress increased the protection afforded to

9   designs of "buildings" so that the actual building of such designs does, in fact, constitute

10   infringement.  *See Beckwith Builders, Inc. v. Depietri*, 2006 WL 2645188 (D.N.H.).

11      The undisputed evidence in this case establishes that Whitehouse's only involvement in

12   the Project has been to build-out the plans that were prepared by ODADA and that were provided

13   by the Rovens.  (Whitehouse Decl., ¶¶ 3-5.)  Therefore, because TBP's plans are not plans for a

14   "building" and are only afforded the "thin" copyright protection provided for technical designs,

15   Whitehouse cannot be found liable for infringement based only on the act of building from the

16   plans it was provided. [4]  <u>See</u>, <u>e.g.</u>, <u>Nat.'l Med. Care, Inc. v. Espiritu</u>, 284 F. Supp. 2d 424, 435

17   (S.D. W.Va. 2003) (citations omitted)

18      In response, TBP argues that its plans are also subject to copyright as the designs of a

19   "building" pursuant to 17 U.S.C. § 102(a)(8) and, thus, Whitehouse's act of building-out the

20   Rovens' Project may constitute infringement.  Accordingly, the only issue that is in dispute is a

21   pure legal question—whether TBP's plans for the interior remodel of the Rovens' condominium

22   constitute a "building" as the word is used in the definition of "architectural work" in the statute.

23

24

25

26

27

      [4] TBP also argues that Whitehouse can be held liable because the "profits" earned from building a structure depicted in plans protected as "pictorial, graphic or sculptural work" can, in certain circumstances, constitute damages for infringement.  TBP's argument is, of course, completely circular.  Whitehouse's profits can only be damages for infringement <u>if</u> Whitehouse is found liable for infringement.  Whitehouse's profits cannot constitute damages attributable to or caused by the alleged infringement of the other Counter Defendants.  <u>Beckwith Builders, Inc. v. Depietri</u>, 2006 WL 2645188 (D.N.H.) ("[A]s a matter of law, [the defendant], which is alleged to have built the Clark Road home, but not copied [plaintiff's] plans . . . cannot be liable for infringing the technical drawings registered.")

28

-11-

1    This legal question, which has not yet been addressed in this circuit, should be decided in

2    Whitehouse's favor.

3        By using the word "building," Congress clearly intended <u>not</u> to include plans for interior

4    remodels within the definition of "architectural works."   The only case to have addressed the

5    issue, <u>Yankee Candle Co. v. New England Candle Company, Inc.</u>, followed the plain language of

6    the statute and found that the designs for internal space within a shopping mall did not constitute

7    the designs of a "building" because those designs did not depict the type of permanent, free

8    standing structure that is conventionally considered to be a "building."  <u>Yankee Candle Co. v.</u>

9    <u>New England Candle Company, Inc.</u>, 14 F. Supp 2d 154, 159-60 (D. Mass 1998)

10       The court's reasoning in <u>Yankee Candle</u> is persuasive.  The court found that all of the

11    examples of "buildings" set out in the legislative history and applicable regulations—houses,

12    office buildings, churches, museums, gazebos and garden pavilions—were permanent, free

13    standing structures that were considered "buildings" in a conventional sense.  <u>Id.</u>  There are many

14    other types of structures, the court noted, that could be designed by architects—such as golf

15    courses, gardens, bridges, overpasses, fences and walls—but that are not entitled to protection as

16    "architectural works" because they cannot be considered buildings.  <u>Id.</u>  Accordingly, calling an

17    individual unit within a larger structure a "building" would distort the plain language of the

18    statute.  <u>Id.</u>  By way of example, the court noted "[s]urely Congress did not intend for individual

19    offices in an office building, though elaborately designed, to qualify as 'buildings' themselves."

20    <u>Id.</u> at 160.

21       Like the retail space at issue in <u>Yankee Candle</u>, the Rovens' condominium remodel cannot

22    be considered a "building" any more than would an individual hotel room in a hotel, an individual

23    floor or office suite in an office building or a kitchen or bathroom within an existing house.  TBP

24    attempts to distinguish <u>Yankee Candle</u> by arguing that TBP's plans for the Rovens' condominium

25    remodel includes designs for internal walls and ceilings and other "architectural features" that

26    would typically be found in a building.  However, TBP's arguments are the same arguments that

27    the court in <u>Yankee Candle</u> considered and rejected.  The court in <u>Yankee Candle</u> noted that just

28    because a "stand alone" retail store would constitute a building, it does not follow that a retail

REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT;
CASE NO. C 07-05473 CRB

store fit inside a pre-existing mall space would also constitute a building. Id. "Had [the

defendant] designed a church to fit into that mall space," the court reasoned, "certainly it would

not become a 'building' just because the . . . legislative history lists 'church' as an example of a

'building.'" Id. at 159-160.

TBP's plans do not include exterior walls, load bearing walls or other structural elements

found in building designs.  (Kudrave Decl. ¶ 11; Hannum Decl., ¶ 6.)  TBP's plans are for an

internal remodel and like plans for the remodel of a kitchen, bathroom, office or other space

within an existing building, they do not constitute the designs for a "building" and are not subject

to protection as an "architectural work."  Because TBP's plans are not an "architectural work,"

Whitehouse cannot be held liable for building the Rovens' remodel and should, thus, be

dismissed from this action.

> **D.      TBP Can Not Establish Walters' Liability Because Walters Did Not Copy
> TBP's Plans.**

The undisputed evidence establishes that Walters did not copy TBP's plans.  (Walters

Depo. 28:7-9 [Breall Dec., Ex. F].)  TBP has offered no evidence raising a question of fact as to

Walters' liability and has failed to address Walters' liability in its opposition.  Walters should be

dismissed from this action.

### III.    CONCLUSION

For the foregoing reasons, the Court should find that TBP has failed to raise a genuine

question of material fact in opposition to and should grant Plaintiffs and Counter Defendants'

motion for summary judgment.

Respectfully submitted,

/s/
Dated: July 11, 2008          Joseph M. Breall
                              Attorneys for
                              Plaintiffs and Counter Defendants

81052\2001\609200.2